Dayna C. Chillas (SBN 181648)
THE CHILLAS LAW FIRM
3645 Ruffin Rd, Suite 210
San Diego, CA 92123
Tel: (858) 652-0250
Dayna.c@hotmail.com

Proposed Attorney for Debtor and Debtor in Possession BWR, LLC

### UNITED STATES BANKRUPTCY COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| In Re: | Chapter 11 |
|---|---|
| | Case No.: 18-03650-MM11 |
| BWR, LLC | DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291] |
| Debtor. | Hearing: May 30, 2019 |
| | Time: 3:00 p.m. |
| | Dept: 1 |
| | Room: 218 |
| | Judge: Hon. Margaret M. Mann |

BWR, LLC, the Debtor and Debtor in Possession in this case ("BWR" or "Debtor") submits this Response to the Examiner's Second Report ("Second Report"). [ecf 291]

**1.** ***Status of the Estate***.

BWR timely made the adequate protection payment to its secured creditor for May 2019. BWR also timely made its monthly payment to TCF Equipment Finance ("TCF"). for May 2019. Cash on hand in BWR's DIP account is approximately $40,000.00 as of May 28, 2019. Debtor expects that amount to increase to approximately $45,000.00 by May 31, 2019. Debtor will timely make its payments to the secured lender and TCF for June 2019 and has the means to do so.

///

///

///

Debtor is current on its payment of UST fees due through March 31, 2019.  The Monthly Operating Report for April 2019 is overdue due to the resignation of Carmen Zamora as the individual in charge of maintaining the Debtor's books and records and preparing its reports. BWR has hired a new individual to serve that function through C&S Harvest, LLC ("C&S").

Day to day management of the operations of the Barbara Worth Resort ("Resort") which is BWR's primary asset is being done by Jackie Vargas.  Ms. Vargas has been with the Resort for in excess of five years and is thoroughly familiar with all aspects of the Resort's operations. She functioned as second in command to Ms. Sandra Beltran prior to Ms. Beltran's resignation as operations manager.  Labor costs have been reduced from approximately $40,000.00 per month Ms. Beltran's tenure to about $12,000.00 per month at present with no compromise or diminution is operations or service.

BWR and Mr. Mejorado have demonstrated their ability over the past year to fund operations and ongoing improvements to the Resort to continue enhancing the value of the property.  Mr. Mejorado has testified in past filing as to the investment he has made in excess of $500,000 to bring the Resort from being non-operation in the June 2018 time frame to its current operating and improving condition.  Mr. Mejorado remains committed to doing so and has the means available to cover any shortfall in revenue to make adequate protection payments, payments to TCF, pay operating expenses and continue with improvements.

2. ***Proposed agreements with Ramada and Sharp Management Group***.

BWR has reached agreement, subject to Court approval, with Wyndham Group to "flag" the Resort under the Ramada brand ("Ramada").  BWR has also had discussions with Sharp Management Group ("Sharp") to provide management training and support.  Sharp is familiar with Ramada and manages properties bearing the Ramada brand in addition to other brands. Representatives of Sharp have met with the Examiner and have provided information including income and expenses under the Ramada brand.

///

///

///

DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291]

Ramada inspected the Resort on March 28, 2019 and subsequently issued a Property Inspection Report ("PIP") listing the improvements Ramada wants to see before flagging the property and additional improvements to be completed thereafter. The primary improvement required was repair and renovation of the swimming pool. That has been done. BWR has also undertaken and completed other repairs as part of its ongoing efforts to renovate and improve the Resort in general. BWR believes those efforts enhance the value of its property regardless of whether affiliation with Ramada is approved. A copy of the PIP annotated to show status of completion is submitted as Exhibit 1. The document has been provided to the Examiner.

BWR disagrees with the Examiner's recommendation not to flag the Resort as a Ramada Inn. Having access to Ramada's worldwide marketing and reservation systems will have an immediate and positive effect on occupancy and financial performance. Revenue and Expense Projection prepared by Sharp based on the Ramada affiliation and marketing advantages is submitted as Exhibit 2. That information has also been provided to the Examiner.

Mr. Mejorado is prepared and able to fund the initial payment of $22,000.00 to engage Ramada if the agreement is approved by the Court. The termination fee of $100,000.00 should a potential buyer not wish to retain the affiliation with Ramada is negligible, in BWR's opinion, as compared with the immediate increase in value the Ramada brand brings to the Resort.

BWR has not brought motions to approve the proposed agreements with either Ramada or Sharp pending the Examiner's comments and this Court's findings.

**3. _Status of Blinding Edge, LLC's Offer_.**

BWR does not know whether Blinding Edge, LLC's ("Blinding Edge") offer remains open or is viable. BWR's counsel has received a letter from an attorney Jack F. Fitzmaurice on behalf of Peter Davis alleging that party of the money Blinding Edge proposed to use to fund its purchase was misappropriated from his client and are "tainted." BWR continues to oppose approval of Blinding Edge's offer (which BWR instructed former counsel not to submit to the Court) as being wholly inadequate and now in addition, potentially exposes the Debtor's estate to litigation.

///

DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291]

**4.  _Recommendation to market and sell the Resort_.**

BWR understands the Examiner's recommendation to market and sell the Resort. However, BWR does not agree that sixty days is a reasonable time to market the property to achieve a price close to its immediately potential value.  Given the Ramada flag and access to the Ramada /worldwide marketing and reservation system, occupancy and revenue are projected to increase significantly within the near to mid-term which will enhance the value of the Resort to more than what a quick term 'fire sale' would realize.  BWR offers expert testimony to that effect in the accompanying Declaration of Dick Lopez in Support of Debtor's Response to Examiner's Second Report.  BWR believes that approach is in the best interests of the estate and requests the Court's consideration.

Respectfully submitted,

Dated: May 28, 2019                    THE CHILLAS LAW FIRM


                                       _/s/ Dayna C. Chillas_____
                                       Dayna C. Chillas
                                       Attorney for Debtor BWR, LLC

Dayna C. Chillas (SBN 181648)
THE CHILLAS LAW FIRM
3645 Ruffin Rd, Suite 210
San Diego, CA 92123
Tel: (858) 652-0250
Dayna.c@hotmail.com

Proposed Attorney for Debtor and Debtor in Possession BWR, LLC

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| In Re:<br><br>BWR, LLC<br><br>Debtor. | Chapter 11<br>Case No.: 18-03650-MM11<br><br>DECLARATION OF EDDIE MEJORADO DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291]<br><br>Hearing:    May 30, 2019<br>Time:        3:00 p.m.<br>Dept:        1<br>Room:        218<br>Judge:      Hon. Margaret M. Mann |
|---|---|

Eddie Mejorado declares:

1. I am over the age of 21 years. I am the Manager and sole Member of Resort Mgmt., LLC, a California limited liability company which is the Manager of BWR, LLC, a California limited liability company ("BWR" or "Debtor") the debtor and debtor in possession in this Chapter 11 case. I have personal knowledge of the matters set forth below and, if called as a witness, could and would attest thereto.

1. BWR timely made the adequate protection payment to its secured creditor for May 2019. BWR also timely made its monthly payment to TCF Equipment Finance ("TCF"). for May 2019. Cash on hand in BWR's DIP account is approximately $40,000.00 as of May 28, 2019. I expect that amount to increase to approximately $45,000.00 by May 31, 2019.

2. BWR will timely make its payments to the secured lender and TCF for June 2019 and has the means to do so.

3. Debtor is current on its payment of UST fees due through March 31, 2019. The Monthly Operating Report for April 2019 is overdue due to the resignation of Carmen Zamora as the individual in charge of maintaining the Debtor's books and records and preparing its reports. BWR has hired a new individual to serve that function through C&S Harvest, LLC ("C&S").

4. Day to day management of the operations of the Barbara Worth Resort ("Resort") which is BWR's primary asset is being conducted by Jackie Vargas subject to my overall supervision. Ms. Vargas has been with the Resort for in excess of five years and is thoroughly familiar with all aspects of the Resort's operations. She functioned as second in command to Ms. Sandra Beltran prior to Ms. Beltran's resignation as operations manager. Labor costs have been reduced from approximately $40,000.00 per month under Ms. Beltran's tenure to about $12,000.00 per month at present with no compromise or diminution is operations or service.

5. I respectfully submit that BWR and I have demonstrated our ability over the past year to fund operations and ongoing improvements to the Resort to continue enhancing the value of the property. I remain committed to doing so and have the means available to cover any shortfall in revenue to make adequate protection payments, payments to TCF, pay operating expenses and continue with improvements.

6. BWR has reached agreement, subject to Court approval, with Wyndham Group to "flag" the Resort under the Ramada brand ("Ramada"). BWR has also had discussions with Sharp Management Group ("Sharp") to provide management training and support. Sharp is familiar with Ramada and manages properties bearing the Ramada brand in addition to other brands. Representatives of Sharp have met with the Examiner and have provided information including projected income and expenses under the Ramada brand.

7. Ramada inspected the Resort on March 28, 2019 and subsequently issued a Property Inspection Report ("PIP") listing the improvements Ramada wants to see before flagging the property and additional improvements to be completed thereafter. The primary improvement required was repair and renovation of the swimming pool. That has been done.

DECLARATION OF EDDIE MEJORADO IN SUPPORT OF DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291]

BWR has also undertaken and completed other repairs as part of its ongoing efforts to renovate and improve the Resort in general. BWR believes those efforts enhance the value of its property regardless of whether affiliation with Ramada is approved. A copy of the PIP annotated to show status of completion is submitted as Exhibit 1. The document has been provided to the Examiner.

8.      BWR disagrees with the Examiner's recommendation not to flag the Resort as a Ramada Inn. Having access to Ramada's worldwide marketing and reservation systems will have an immediate and positive effect on occupancy and financial performance. Revenue and Expense Projection prepared by Sharp based on the Ramada affiliation and marketing advantages is submitted as Exhibit 2. That information has also been provided to the Examiner.

9.      I am prepared and able to fund the initial payment of $22,000.00 to engage Ramada if the agreement is approved by the Court. The termination fee of $100,000.00 should a potential buyer not wish to retain the affiliation with Ramada is negligible, in my opinion, as compared with the immediate increase in value the Ramada brand brings to the Resort. BWR has not brought motions to approve the proposed agreements with either Ramada or Sharp pending the Examiner's comments and this Court's findings.

10.      BWR understands the Examiner's recommendation to market and sell the Resort. However, BWR does not agree that sixty days is a reasonable time to market the property to achieve a price close to its immediate potential value. Given the Ramada flag and access to the Ramada /worldwide marketing and reservation system, occupancy and revenue are projected to increase significant within the near to mid-term which will enhance the value of the Resort to more than what a quick term 'fire sale' would realize. BWR believes that approach is in the best interests of the estate and requests the Court's consideration.

Signed on May 28, 2019 at El Centro, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_/s/ Eddie Mejorado_____
Eddie Mejorado

DECLARATION OF EDDIE MEJORADO IN SUPPORT OF DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291]

Dayna C. Chillas (SBN 181648)
THE CHILLAS LAW FIRM
3645 Ruffin Rd, Suite 210
San Diego, CA 92123
Tel: (858) 652-0250
Dayna.c@hotmail.com

Attorney for Debtor and Debtor in Possession BWR, LLC

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| In Re:<br><br>BWR, LLC<br><br>Debtor. | Chapter 11<br>Case No.: 18-03650-MM11<br><br>DECLARATION OF DICK LOPEZ IN SUPPORT OF DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT<br><br>Hearing: May 30, 2019<br>Time:    3:00 p.m.<br>Dept.    One<br>Room:    118<br>Judge:   Hon. Margaret M. Mann |

Dick Lopez declares:

1.  I am licensed by the State of California as a real estate broker. I first obtained my real estate license in 1971 and became a broker in 1973. I began what became a life-long career as lodging broker career in 1984. I founded Lodging Brokers Network ('Network") in ~~1992.~~ 2012 Network; is a real estate brokerage which specializes in marketing hotels, motels, resorts, inns, boutique bed and breakfasts properties. I joined Hotel Brokers International ("HBI") in 1994 and served as President of HBI in 2005. In addition to ~~be my~~ real estate broker license, I hold the designation of a Certified Hotel Broker (CHB) which was awarded to me in 1996. I am one of only five individuals in California that have this designation and are currently active.

///

///

DECLARATION OF DICK LOPEZ IN SUPPORT OF DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT

2.    I have reviewed information about the Resort provided to me by Mr. Mejorado including the recent appraisal, the proposed agreements with the Wyndham group to bring the Resort into the group under the Ramada brand and with Sharp Management Group to provide management of the property and its operations, the proposed budgets and income/expense projections development by Sharp and the Examiner's Second Report.

3.    Based on my experience in marketing and selling hotel properties, including various types of resorts, in my opinion the proposed affiliation with Ramada is in the best interest of enhancing the value of the Resort in the near and mid-term. Ramada offers world-wide marketing and a global reservation system which, in my opinion, will cause a significant increase in occupancy of the Resort by expanding the base of potential guests from what is now solely a local market. The projections developed by Sharp are reasonable, and even conservative, based on my knowledge and experience in the lodging industry. The primary potential adverse factor with any potential buyer who does not want the Ramada affiliation is a termination fee which is relatively nominal as compared with what will be, in my opinion, a substantial increase in the value and marketability by joining the Ramada brand.

4.    If the Court decides the Resort is to be listed and sold, Network would like to be considered as the listing broker with myself as the listing agent with court appointed Examiner. I am familiar with other brokers in the field such as Atlas Realty Group. Network is equally, and in some respect more, qualified to market the Resort to achieve the best price. Our firm has access to all of the customary channels for marketing properties of this genre. In addition, Network has a proprietary database of approximately ten thousand individuals and companies, of which approximately four thousand have requested direct email information, who have the potential of being interested buyers/investors. Network also has access to a database of approximately twenty-five thousand additional individuals and companies worldwide, of which over eleven thousand are available by direct email, through our affiliation with Hotel Brokers International.

///

///

DECLARATION OF DICK LOPEZ IN SUPPORT OF DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT

2

5.      In my opinion, sixty days is not a reasonable time to market the Resort in part because the spring and summer months are the best time of the year for this type of property.  I am of the opinion that six months is a more reasonable amount of time.  That would enable the Resort to continue improvements, establish its Ramada branding and take advantage of its peak season to demonstrate the level of income which will result from the enhanced condition and marketing of the Resort to reflect its true value.

6.      I am also of the opinion that a "fire sale" at this time is not in the best interests of the estate or BWR. If given the listing, Network and I would list the Resort at is most recently appraised value.  Based on my experience, the Resort will sell for a price in excess of $12 million if properly marketed.

The above is of my personal knowledge. I can and would so testify if called as a witness.

Signed on May 28, 2019 at Napa, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dick Lopez

DECLARATION OF DICK LOPEZ IN SUPPORT OF DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT

Dayna C. Chillas (SBN 181648)
THE CHILLAS LAW FIRM
3645 Ruffin Rd, Suite 210
San Diego, CA 92123
Tel: (858) 652-0250
Dayna.c@hotmail.com

Proposed Attorney for Debtor and Debtor in Possession BWR, LLC

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| In Re:<br><br>BWR, LLC<br><br>Debtor. | Chapter 11<br>Case No.: 18-03650-MM11<br><br>DECLARATION OF DAYNA C. CHILLAS IN SUPPORT OF DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291]<br><br><br>Hearing:   May 30, 2019<br>Time:      3:00 p.m.<br>Dept:      1<br>Room:      218<br>Judge:     Hon. Margaret M. Mann |

Dayna C. Chillas declares:

1.    I am an attorney licensed to practice law in the State of California and before this Court. I am counsel for BWR, LLC, the debtor and debtor in possession in this case ("BWR").

2.    As counsel for BWR, I received a letter from attorney Jack F. Fitzmaurice on behalf of his client Peter Davis, a true and accurate copy of which is submitted herewith. I interpret the letter to allege that a portion of the funds Blinding Edge, LLC ("Blinding Edge") may use to fund any purchase of the Barbara Worth Resort was misappropriated from his client and is "tainted."

///

///

DECLARATION OF DAYNA C. CHILLAS  IN SUPPORT OF DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291]

3.    I am concerned that the estate of BWR will be subject to litigation by Mr. Davis if the Blinding Edge offer is approved.

The above is of my personal knowledge. I could and would so testify if called as a witness.

Signed on May 28, 2019 at San Diego, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_ /s/ Dayna C. Chillas_____
Dayna C. Chillas

**EXHIBIT**



## Ramada Worldwide Inc.

## PROPERTY IMPROVEMENT PLAN REPORT

---

# Barbara Worth Country Club / Imperial Palms Hotel Holtville, CA

# Conversion To Ramada

# Inspection Date: March 28, 2019

## PLAN REQUIREMENTS & SUBMITTAL PROCESS

Please submit all design plans and specifications to Wyndham Interior Design (interior.design@wyndham.com) for review and approval prior to purchasing or starting renovations. All renovations must meet Brand Standards, any items purchased or renovated without approval may need replacement if they do not meet brand design standards.

## OVERVIEW

The PIP identifies specific items which we inspected at the Facility which were not in compliance with brand standards and need to be corrected. It is the responsibility of the Owner/Franchisee to review the Brand Standards Manual for a complete description of all standards and to maintain Brand Standards for any areas of the property that are not specifically covered in this PIP.

In addition, you are responsible for ensuring that the Facility is constructed, improved, maintained and operated in compliance with all applicable federal, state and local laws, codes, ordinances and regulations, including but not limited to, the Americans with Disabilities Act and its Accessibility Guidelines. This PIP was based on a random sample inspection of the Facility on the date specified. You may need to take additional actions to meet brand standards or comply with law or, at our discretion, if the condition of the facility changes materially since the inspection date or if the brand standards change.

All items in this PIP are required to be completed no later than the timeframes noted. Time extensions in no way imply a waiver. Failure to comply with specified deadlines for completing items may result in default under your license or franchise agreement and reservation service suspension. All items will continue to be evaluated on condition, appearance and adherence to brand standards through periodic quality assurance inspections. Any items on a future quality assurance inspection that do not meet brand standards will be required to be remedied. Failure to maintain acceptable levels of conditions and appearance and adherence to brand standards may be grounds for default under the Franchise or License Agreement.

Prior to the commencement of all work you are required to ensure that you are complying with the most current standards. Please consult your Development Director or noted department with specific questions to comply with the requirements contained in the PIP.

*To obtain access to the Brand Standards please visit https://brandstandards.wyndham.com and/or contact your Wyndham representative to request temporary Brand Standard Portal access. Your request will be reviewed and processed in a timely manner.*

By signing this PIP, you acknowledge and agree that this PIP may be provided to Wyndham Hotels & Resort's approved vendors for the purpose of their offering products and services that are required to complete this PIP. You hereby grant permission for the entire PIP and/or any information necessary for the vendor to offer their products and services. The information provided includes but is not limited to contact information, property address, number of rooms, brand converting to, and a list of items related to necessary or required products and services.

ONLY THE FRANCHISOR MAY REVISE THIS PIP. THE PIP IS VOID 180 DAYS AFTER THE INSPECTION DATE UNLESS THE FRANCHISE OR LICENSE AGREEMENT BECOMES EFFECTIVE.

The Franchise Review Committee may in its discretion revise this PIP as a condition of approving your application. You should not consider this PIP to be final until we sign the License or Franchise Agreement.

Signed: _____    Date: _____

Print Name: _____

**Revisions- All Previous Copies are Invalid**

# Capital Improvement Plan

## To Be Completed Prior To Opening

| Category | Sub-Category | Item Description | Required Action Description | Design/ Brand Approval Required |
|---|---|---|---|---|
| Administrative Policies | Additional Item | Additional Inspection Item | Maintenance: The property must be well-maintained. This requirement pertains to all areas of the property, including, but not limited to: guestrooms, public areas, grounds, curb appeal, building, equipment, decor, furniture, fixtures and equipment, vehicles, signs, linens and supplies. A general maintenance program must be in place to ensure that all facilities are functional having addressed all conditional deficiencies. | Done |
| Administrative Policies | Additional Item | Additional Inspection Item | Cleanliness: The property must be clean and neat in appearance. This requirement pertains to all areas of the property, including, but not limited to: guestrooms, public areas, grounds, curb appeal, building, equipment, decor, furniture, fixtures and equipment, vehicles, signs, linens and supplies. Properties not meeting cleanliness standards may be required to complete housekeeping training. | Done |
| Administrative Policies | Additional Item | Additional Inspection Item | Brand Standards: This property improvement plan identifies specific items which do not currently meet brand standards. The property must also comply with all standards as outlined in the Brand Standards Manual. This requirement pertains to all areas of the property, including, but not limited to: guestrooms, public areas, grounds, curb appeal, building, equipment, decor, furniture, fixtures and equipment, vehicles, signs, linens and supplies. | Done, subject to inspection |
| Administrative Policies | Additional Item | Additional Inspection Item | Maintenance: The property must be well-maintained. This requirement pertains to all areas of the property, including, but not limited to: guestrooms, public areas, grounds, curb appeal, building, equipment, decor, furniture, fixtures and equipment, vehicles, signs, linens and supplies. A general maintenance program must be in place to ensure that all facilities are functional having addressed all conditional deficiencies. | Done, subject to inspection |
| Administrative Policies | Hotel Technology | Can you access high speed Internet at the property and does the minimum bandwidth into your hotel meet Brand Standards? | Provide complimentary high-speed Internet access in all guestrooms and interior public areas from an approved vendor, ensuring all Brand Standard requirements are met including a Terms and Conditions page, Brand splash page, In-Room instructions, and Guest support as required. | Done |
| Administrative Policies | Hotel Technology | Property Management System | Install a property management system as required. | To be done by Smart |
| Food & Beverage | Breakfast / Hospitality Room | Hours of Operation | If property continues to serve continental breakfast. Provide a Continental breakfast with required menu to include one hot item and brand required presentation items. | Done |
| Food & Beverage | Breakfast / Hospitality Room | Furniture -Tables/Chairs | Replace chairs in continental breakfast area as required. Banquet style chairs are not acceptable. | Yes    Done |
| Food & Beverage | Breakfast / Hospitality Room | Furniture -Counters/Cabinetry | Replace / provide professionally crafted cabinetry/countertops in breakfast area as required. | Yes    Done |
| Food & Beverage | Dining Room | Hours of Operation (Restaurant and/or bar) | Ramada's are designed to be full service properties. They are required to have a full menu service restaurant serving breakfast and dinner; a cocktail lounge and meeting room facilities. Room service is highly recommended. | In Process    Room Service Required |
| Guest Rooms | Bed / Bedding | Top of Bed (including bed skirt) | Replace bed toppings to include bed skirts as required. | Yes    In Process (required) |
| Guest Rooms | Case Goods | Desk/Activity Table/Chair | Replace desk chairs where non-compliant as required. | Yes    Done |
| Guest Rooms | Case Goods | Wall Pictures, Framed Wall Mirror or Framed Full Length Mirror | Provide artwork as required. | Yes    In process |
| Guest Rooms | Case Goods | Lounge Chairs/Sofa(s) | Provide framed wall mirrors as required. | |
| Guest Rooms | Case Goods | | Provide 2nd seating option in rooms with 2 beds. | Yes    Done |
| Guest Rooms | Doors / Windows / Locks | Entrance Door Locks (including secondary locks) | Install secondary locks as required. | In process |

2050 Country Club Drive
Holtville CA 92250

3/29/2019 3:40:59 PM

## To Be Completed Prior To Opening

| Category | Sub-Category | Item Description | Required Action Description | Design/ Brand Approval Required |
|---|---|---|---|---|
| Guest Rooms | Doors / Windows / Locks | Drapes/Sheers/Cords/Valance | Provide sheers as required. | Yes  Done |
| Guest Rooms | Tub / Shower | Shower Curtain | Replace shower curtains and heads as required. | Done |
| Public Areas | Building Exterior | Doors / Windows | Repair and paint service doors where damaged and faded.<br><br>Replace windows where cracked. | In Process |
| Public Areas | Building Exterior | Facade/Fascia/Storefronts | Clean, repair and paint building exterior (façade, fascia, soffits, railings, doors, trim etc.) In entirety with a brand approved color scheme. | Yes  In Process |
| Public Areas | Fitness Room | Finishes-Flooring/Ceiling/Walls/Doors/Window | Provide a fitness center to include all FF and E, Finishes and Accessories as required. Must use brand approved equipment package from Hotel fitness or Precor | Yes  To be done |
| Public Areas | Ice/Vending | Equipment- Vending/Ice | Replace bin style ice machines as required.<br><br>Provide beverage and snack vending machines as required. Ensure machines are located in a designated vending area. | To be done |
| Public Areas | Interior Corridors/Stairwells | Finishes-Doors/Ceilings/Walls/Windows/Window Treatment | Replace wall covering in corridors.  Refinish chair rail. | Yes  5-7% complete |
| Public Areas | Interior Corridors/Stairwells | Flooring | Replace carpet in corridors. | Yes  50% complete |
| Public Areas | Public Restrooms | Finishes - Ceiling/Walls/Entrance doors | Paint walls in public restrooms. | Yes  50% complete |
| Public Areas | Signage/Vehicles | Room number signs / Interior signage / Directional Signage | Replace Public Area signage package (directional, amenity and guestroom number plaques) per Brand graphic specifications. | Yes  To be done |
| Public Areas | Signage/Vehicles | Building / Primary Signage | Provide approved exterior and interior signage per Brand graphic standard specifications. For exterior signage a fully executed prepaid contract with an approved sign vendor must be provided prior to commencement. Please contact a property openings manager at 800-343-7639 for approved sign vendor information.<br><br>Repair and paint primary sign stanchion. | Yes  To be done upon approval |
| Public Areas | Swimming Pool/ Whirlpool | Finishes - Walls/Ceiling/Windows/Fencing/Gate | Renovate swimming pool area of all FF and E, Finishes and Accessories (pool surface, deck, equipment, ladders, handrails, furniture, fencing, etc.) as required. | Yes  Done |

## To Be Completed by 3 Months After Opening

| Category | Sub-Category | Item Description | Required Action Description | Design/ Brand Approval Required |
|---|---|---|---|---|
| Guest Rooms | Case Goods | Dresser, Credenza or Media Chest (2 drawers) | Replace casegoods where mismatched.<br><br>Provide nightstands where missing. | Yes  In Process |
| Guest Rooms | Lighting | Light Fixtures | Provide lamps where missing to coordinate with existing package. Ensure desk lamps have electrical outlet at the base as required. | Yes  Done |
| Public Areas | Building Exterior | Stairwell/Stair Tower | Replace exterior turf at stair landings where damaged and worn. | Yes  To be done |
| Public Areas | Business Center | Finishes - Flooring/Ceiling/Walls/Doors/Window Treatment | Provide a Business Center / iPad Kiosk as required. | Done |
| Public Areas | Exterior Grounds | Dumpster Enclosure | Construct a dumpster enclosure. Dumpster is to be screened from view. | Yes  Done |

## To Be Completed by 3 Months After Opening

| Category | Sub-Category | Item Description | Required Action Description | Design/ Brand Approval Required |
|---|---|---|---|---|
| Public Areas | Laundry | Finishes- Flooring/Ceiling/Walls/Doors/Window | Replace flooring in guest laundry as required. | Yes  *To be done* |
| | | | Repair and paint ceiling in guest laundry where peeling and damaged to provide a consistent appearance. | |
| | | | Replace wall covering in guest laundry. | |
| Public Areas | Meeting Room / Board Room | Finishes- Ceiling/Walls/Doors/Window/Window Treatments | Replace ceiling tiles in banquet room where stained. Ensure replacement tiles match existing tiles, or total replacement will be required. | Yes  *Done* |
| | | | Re-face room dividers in banquet room. | |
| Public Areas | Public Restrooms | Lighting | Install light cover in women's public restroom where missing. | *Done* |

## To Be Completed by 6 Months After Opening

| Category | Sub-Category | Item Description | Required Action Description | Design/ Brand Approval Required |
|---|---|---|---|---|
| Food & Beverage | Dining Room | Finishes - Doors/Windows/Ceilings/Walls | Install window treatments in shared dining room/breakfast area. | Yes |
| Food & Beverage | Dining Room | Finishes- Flooring | Replace carpet in shared dining room/breakfast area. | Yes |
| Guest Rooms | Bed / Bedding | Linens (WynRest where applicable) and Mattress Pad | Provide a complete inventory of WynRest linens to include sheets, pillows, pillow cases, pillow protectors, blankets and mattress pads. | |
| | | | Provide a complete inventory of WynDry terry to include washcloths, bath mats, bath and hand towels. | |
| Guest Rooms | Kitchen Appliances / Supplies | Kitchen counter with sink, cabinet, breakfast bar chair. Studio- Wet bar counter, cabinet | Replace kitchen counter tops with an upgraded natural stone. | Yes |
| Guest Rooms | Vanity / Commode | Vanity w/ skirt and backsplash/Sink | Replace laminate vanity and sink tops with an upgraded natural stone. | |
| Public Areas | Building Exterior | Storage Buildings | Replace storage buildings where damaged | |
| Public Areas | Exterior Grounds | Parking Lot/Curbs/Wheel Stops/Striping | Hot-patch, reseal and stripe parking lot. Resurface badly cracked and damaged areas. | |
| | | | Paint curbs and wheel stops where peeling paint. | |
| | | | Replace curbs where damaged | |
| Public Areas | Interior Corridors/Stairwells | Lighting | Increase lighting in corridors to provide for better illumination. Ensure fixtures are uniform in style. | Yes |
| Public Areas | Public Restrooms | Doors/Stalls Partitions | Paint entrance doors where scuffed to provide a consistent appearance. | |
| Public Areas | Public Restrooms | Sink/Vanity | Replace vanity/sink units to include fixtures and trim. | Yes |
| Public Areas | Swimming Pool/ Whirlpool | Furniture - Tables/Chairs/Lounges/Umbrellas | Provide a swimming pool furniture package as required. | Yes  *Done* |

## To Be Completed by 1 Year After Opening

| Category | Sub-Category | Item Description | Required Action Description | Design/ Brand Approval Required |
|---|---|---|---|---|
| Public Areas | Exterior Grounds | Seating/Trash Can/Ash Urn | Replace benches where worn and damaged. | *Done* |

2050 Country Club Drive
Holtville CA 92250

3/29/2019 3:40:59 PM

# Franchise Quality Observations

The following items were observed during the recent visit to your property and may impact the overall satisfaction of your guests. These items are not part of your Property Improvement Plan (PIP), but are subject to grading on any future Franchise Quality evaluation if not addressed.

| Category | Sub-Category | Item Description | Required Action Description | Quality Concern |
|---|---|---|---|---|
| Administrative Policies | General | Is the property compliant to the current non-smoking standard? | Provide 100% non-smoking rooms as required. | General Compliance |
| Administrative Policies | General | Uniforms/Name Tags | Provide uniforms and name tags for all departments as required. | General Compliance |
| Administrative Policies | Training & Certifications | HMP Training/Conference Attendance | Property manager is required to attend HMP (Hospitality Management Program) training within 90 days. | General Compliance |
| Administrative Policies | Training & Certifications | Wyndham Rewards Training/Count on Me/Service Culture | Property manager is required to be Wyndham Rewards certified and property must fully comply with all Wyndham Rewards requirements. | General Compliance |
| Food & Beverage | Breakfast / Hospitality Room | Television cords concealed from view (only if television is provided) | Conceal television cords and cables. Cords and cables are to be screened from view. | General Compliance |
| Guest Rooms | Guestroom Appliances / Supplies | Guestroom Supplies | Provide guestroom supplies and amenities package to include AM/FM alarm clock radios and hair dryers as required. | General Compliance |
| Guest Rooms | Guestroom Appliances / Supplies | Telephone/Dialing instructions | Provide telephones with logo faceplates to include dialing instructions as required. | General Compliance |

2050 Country Club Drive
Holtville CA 92250

3/29/2019 3:40:59 PM

**EXHIBIT**

# FITZMAURICE & DEMERGIAN

*An Expense Sharing Association - Not a Partnership or Joint Endeavor*

### *Attorneys At Law*

**SOUTH BAY OFFICE**
339 HILLTOP DRIVE, SUITE 101
CHULA VISTA, CALIFORNIA 91910-7880
PHONE: (619) 591-1000 FAX: (619) 591-1010

JACK F. FITZMAURICE, ESQ.

**SAN DIEGO OFFICE**
**DAVID K. DEMERGIAN, ESQ.**
550 WEST "C" STREET, SUITE 1690
SAN DIEGO, CALIFORNIA 92101-3540

FROM THE DESK OF
**JACK F. FITZMAURICE, ESQ.**
Email: jackf@fitzmauricelaw.com
April 19, 2019

*Via: USPS mail*

Dayna C. Chillas
THE CHILLAS LAW FIRM
3645 Ruffin Road, Suite 210
San Diego, CA 92123

Re: Chicago Title Escrow No. 94808-RM

Dear Ms. Chillas;

As you may know I represent contractor Peter Davis. Mr. Davis was owed monies by Daniel Chiu/Oasis Growth Partners, LLC relative to services performed in connection with a hotel under construction at Imperial, California. Upon closure of a hotel refinance Oasis was agreeable to the payment of $150,000 to Mr. Davis. At about the same time Mr. Davis and one Virgil Hobbs were planning a prospective transaction involving the Barbara Worth Resort and its first trust deed lender Clearing House. To that end Mr. Hobbs caused the opening of escrow no. 94808-RM at Chicago Title Insurance Co. Oasis caused the disbursement of $200,000 from its refinance transaction representing $150,000 of Davis funds and representing $50,000 of Hobbs funds.

Unknown to Mr. Davis Virgil Hobbs caused two (2) things to obtain. First, that the $200,000 in escrow was subject to a $50,000 penalty should the prospective Clearinghouse Community Development Financial Institution transaction not occur. Second, that escrow was opened in the name of Blinding Edge One, LLC. In both instances Mr. Davis was not consulted. Mr. Davis is not a member of Blinding Edge One, LLC and, indeed, had never heard of it. Moreover, he never consented to a $50,000 penalty.

As soon as Mr. Davis became aware of the penalty and the Blinding Edge One, LLC arrangements, he requested the return of his monies. Mr. Hobbs ignored him. Thereafter and on more than one occasion he has demanded the return of his $150,000 from Mr. Hobbs, Blinding Edge One, LLC and Jeff Ells (who is the principal of Blinding Edge One, LLC). Since November, 2018 Mr. Davis, as noted above, has been ignored.

It is clear beyond cavil that Mr. Hobbs and Mr. Ells, using the Blinding Edge One, LLC vehicle, have converted, a species of theft, Mr. Davis' $150,000 to their own purposes.

On February 22, 2019 Blinding Edge One, LLC's purchase arrangement with the debtor in In re: BWR, LLC (the former Barbara Worth Resort), a Chapter 11 bankruptcy proceeding pending in the bankruptcy court for the Southern District of California, Blinding Edge One, LLC was submitted to the court for approval. The transaction includes the payment of Mr. Davis' $150,000 to the Clearinghouse lender on behalf of Blinding Edge One, LLC.

The purpose of this correspondence is to inform you that the receipt of the fruits of the conversion of Mr. Davis' money will not be a bona fide receipt inasmuch as you are now fully aware that the Davis $150,000 was in a sense embezzled from him. Your acceptance of those funds is at your own risk.

Sincerely,

Jack F. Fitzmaurice, Esq.
JF:jls

CC: Pete Davis

## PROOF OF SERVICE

I, the undersigned, whose address appears below, declare:

I am, and at all times hereinafter mentioned was, more than 18 years of age. On May 28, 2019, I served a true copy of the within

DEBTOR'S RESPONSE TO EXAMINER'S SECOND REPORT [ECF 291]

**By ECF Noticing System on the following:**

| | |
|---|---|
| Tiffany L. Carroill<br>Acting United States Trustee | tiffany.l.carroll@usdoj.gove |
| Leslie Skorheim, Trial Counsel<br>Office of the United States Trustee | Leslie.skorheim@usdoj.gov |
| Elizabeth C. Amo | rosi@usdoj.com |
| Office of the United States Trustee | ustp.region15@usdoj.gov |
| Wolfgang F. Hahn | Ellobo1@san.rr.com |
| Brett Ramsaur | brett@ramsaurlaw.com |
| Douglas G. Tennant | dtennant@frankel-tennant.com |
| Richard A. Solomon | richard@sglwlaw.com |
| Holly Nolan | holly@sglwlaw.com |
| Richard M. Kipperman | teresaj@corpmgt.com |
| Kelly Ann Tran | ktran@mulvaneybarry.com |

I certify under penalty of perjury that the foregoing is true and correct.

Signed on _____5/28/2019_____          */s/ Dayna C. Chillas*
3645 Ruffin Road, Suite 210
San Diego CA 92123